will hear argument first this morning in United States v. Chandler, 22-166 and 23-585. Mr. Hyde. May it please the court, I had actually written the court about a month ago suggesting that since Mr. Chandler is going to be released in a few days it might be better to just move to the decision part. So Mr. Hyde, may I ask you a question? Yes. Why why did you not move earlier? Why did we receive that letter not too long before oral argument? I had given the matter some thought the actually the first time I I wondered about maybe bringing a motion to speed things up. Yes. The government scheduled its brief for January. Perhaps that was in my judgment I didn't think that it was something that the court would grant a motion for expedited consideration under the Well, for one thing I didn't know until fairly recently that Mr. Chandler was in in the hospital. I predicted that's where he'd end up but I didn't actually know that to be the case. I'd say it was an overly cautious approach on my part your honor. I mean the consequence I think of this is that as a result of the appeal, the appeal itself may be moot by the time we decide this. Maybe it's going to be moot in a few days. Yes. Yes your honor. And that's just part of the reason that I denied the request because I wanted to ask you why why why this delay occurred? Why didn't you ask for an expedited appeal? And that's your best answer. That is my answer your honor. I I'm very cautious when when I ask the court to hurry things along. My experience has been that when that happens there's a you better have a pretty good explanation. Back earlier in the hospital it's a mistake on my part that maybe not have tried to move things along quicker. I did look into when I first got the when I got the appeal back in the summertime the first thing I did was write to the U.S. attorney send them a copy of the medical report that was a part of the record and asked that they consent to Mr. Chandler's release for exactly the reasons that I put in my brief that he was going he was at a very high risk for COVID-19. The the U.S. attorney's office didn't see things the way I did so they denied that. I perfected the appeal back in the fall. I think the first time I had a serious thought about moving things along quicker was when I saw the government's brief date. Again I just didn't I didn't foresee the future the way maybe I should have. And so I take it that on Friday he will be removed from the United States is that correct? I'm sorry your honor you broke up what was your question? I take it that on Friday he will be removed from the United States is that correct? That's right apparently they're delivering him right up to the port of entry north of Plattsburgh in New York State from what I understand. Okay well we'll we'll hear from the government you reserved a minute for. Good morning your honors may it please the court my name is Rajiv Dosanjh and I represent the government on this appeal. The district court the issues here are that are raised on the appeal are whether the district court abused discretion by not appointing counsel to Mr. Chandler and whether the district court made an error of fact in its assessment of the record and I think neither of those claims has merit. To address the court's concerns raised initially Mr. Hyde did reach out to our office to seek our consent to his compassionate release given the problems with the motion his failure to exhaust his remedies as to the COVID-19 claim and also the lack of actual medical documentation. We suggested that he the best remedy would be to go back make another request for a motion from the BOP start that 30-day clock and then come back to the district court with a better record and again your honors I think the issues on this appeal did that happen or did that not happen? That did not happen your honor and as far as the Mr. what we knew of Mr. Chandler's health claims he did have significant health issues there's no doubt about that but as far as his ability to function within the prison context it was not clear whether that was impossible and as I suggested in our letter and as the records that we've received subsequently to the filing of our brief show his condition has gotten progressively worse over the last few months. At the same time he's a counselor sorry counsel you you argue that Mr. Chandler was required to exhaust his administrative remedies. Is there a process within the Bureau of Prisons for claims particularly when somebody is extraordinarily sick? Your honor I do not believe that there's a process I'm not aware of a process the the rule is that they have the statute by statute they have to wait 30 days after they make their request if the BOP doesn't act within 30 days they can come directly to the district court to make their motion so that the expedition the the reason that was created the statute was created that way was to was to try to expedite these motions and and force BOP to consider them or if not to give defendants the ability to come straight to the district court so that's it's within the statute that that there is this kind of expedited process and it's part of the statutory remand. Turning I think to the questions in this appeal they Mr. Chandler argues that the district court should have appointed him counsel. The motion that he made he didn't make any effort to to show that he could not obtain counsel himself. To Mr. Hyde's credit I believe he's acting pro bono on this case Mr. Chandler was and so I think what is what so I'm interested in this because I chaired the Defender Services Committee of the Judicial Conference and there was an issue about the appointment of counsel in these compassionate release cases throughout the country. What is the impediment to appointing counsel for example this is there not discretion to appoint CJA counsel if someone can't afford an attorney for these compassionate release motions? I don't know if they could qualify a CJA counsel your honor. Under Reddick I think that this court has said that in an analogous context of 3582 C2 the CJA did not cover this as an ancillary matter. Whether I think that there's precedent in this that there's precedent in this that there's precedent in this that there's precedent in this that there is inherent authority to appoint counsel. The question then becomes how how that gets paid for and that's an issue I think within the court's purview to figure out or to seek pro bono counsel but in Reddick this court was concerned with the burdens that were placed on finding any kind of right to counsel in this context given that the especially given since Brooker and in this in this particular context there's there's the volume of such motions is increasing tremendously. Yeah but I believe that the idea was to actually facilitate court review so that the courts were not inundated with pro se applications that are much more difficult to navigate through and here we've got the benefit I think of counsel and that's beneficial for for us to proceed through and get through these compassionate release motions. There are thousands of these. Your honor there's no doubt that that counsel would be beneficial in these cases. It's a question also of the district courts authority and discretion to handle its docket to in this case the problems with the motion that is in front of it including the statutory problem of his failure to exhaust his COVID claim because he made that claim before the pandemic hit. He sought compassionate release before the pandemic hit that the district court felt that on this motion I think it was within its discretion to say on this motion given the problems with it I was going to deny it knowing that that there's no limit on a number of such motions that defendants can bring and so he could have started this process again and given his ability to reach out to Mr. Hyde and seek his assistance he could have sought his assistance in bringing another motion. Your honor I won't deny that this is a particularly difficult case. This is a defendant who there's some indication in the record going back to before he went to the hospital that there was some suspicion of dementia and again this is a difficult case. The district court was aware of Mr. Hyde's other health problems having sentenced him. Mr. Hyde received a sentence that was less than half the statutory minimum because of he qualified for safety valve but nevertheless his conduct was not insubstantial. He participated in a cross-border drug trafficking organization for over four years involving many millions of dollars. He was a courier but he was clearly involved enough to to be accountable for a significant amount. Do you agree that this is now well as of April 30th I guess technically it will be this appeal will be moved? Your honor I believe it would be the over since since early January he's been outside of prison as well in a hospital being cared for by you know in a hospital outside of his prison context. BOP has treated him compassionately in that regard and I think as far as the relief he requests that will happen on April 30th on Friday when he is transported and brought into the custody of the Canadian officials and his and his daughter. I don't want to the sadness around this case but as far as the legal issues presented here and whether the court abused its discretion I think there's no basis for finding that in this in this period we have right now before the case becomes moved. Let me ask you a different kind of a question about the about the merits of the case. What is the significance for purpose of for purposes of this case of the fact if I understand correctly the Dr. O'Brien who gave a medical opinion is a person who's had his license revoked is that correct? That's correct your honor. What significance that what significance does that have for the for the merits of the case? Well I think your honor that the claim was made that somehow the the medical records that under underlay Mr. O'Brien's or Dr. O'Brien's evaluation were evident from that evaluation and I was merely pointing out that those records were which Mr. Chandler obviously had to give to Mr. O'Brien were never presented and we we don't have I don't think it's it's it was inappropriate or I don't think it's we can rely on the fact that those are that there's an accurate representation of Mr. Chandler's full medical opinion delivered by a doctor who's licensed to practice medicine has been revoked is that does that have evidentiary value or it can be treated can it be treated as of zero evidentiary value or is it of is it of some evidentiary value what what do the authorities say on that subject if you looked into it? Unfortunately I did not look into that specific question I think based on the record here and our information I think the at the very least those his evaluation should be treated with some skepticism first of all his evaluation was aimed at establishing that Mr. Chandler had diminished capacity at the time he pled guilty in 2017 and there's really no basis I think for that in the record especially given the the the PSR and and his plea. I mean can the certificate of a doctor of a of a license revoked doctor as as zero evidence or as a court compelled to does it constitute does it constitute creditable evidence? I would I would say that it was it's it lies somewhere in between I don't think you can have a hard and fast rule here perhaps the the amount of weight to give to the evidence and whether to credit that evidence I think would again be within the district courts discretion and even here your honor that evidence was never even the the evaluation of Dr. O'Brien was not given to a district court in regards to this compassionate release motion it was a separate proceeding under 2255 arguing that his his plea was invalid so I think here I think the rule should be that the district court has discretion to treat that evaluation in the manner it sees fit and part of the evaluation should be the credibility of the doctor and exactly what the opinion is being offered for. Thank you. Thank you. Can I ask one quick question? Just to follow up on your your response counsel regarding BOP emergency procedures for COVID. Now Mr. Chandler claims that other courts have allowed inmates to bypass usual administrative exhaustion requirements due to the exigencies of COVID-19. What's what's your view on that? Your honor I think that's correct the courts have done that. The Department of Justice has not pushed back on such rulings. We've I think in general I think we've we've gone at least in my in this district have have not challenged those those kind of decisions because there's really no mechanism to challenge it for us on appeal. I think if the district court wants to review the merits of motions we are not going to I think stand on exhaustion as a reason for the for the district court not to take a look. We've the Department of Justice position is that the exhaustion requirement under the statute is not a jurisdictional bar. It's a it's a it's a claims processing rule which means that if it gets invoked it becomes a mandate it becomes mandatory and here the district court invoked it. But district courts in our district and I think in the Southern District have looked at the exhaustion requirement and and said well under these circumstances I'm going to not invoke that that bar and consider the claim. I don't think that anyone in our district would really push back against that. I think these these decisions should stand and fall mainly on their merits. Exhaustion does have a value though especially in this case it would have given the created a better record for the defendant and for the District Courts without full exhaustion in the first instance but I'm not 100% sure about that. I apologize your honor if I got the law wrong I'll take a look. Mr. Hyde. Yes just a couple of things. First of all I want to clear up any misconception about Mr. Chandler retaining me to do this appeal. I was assigned this case from the Second Circuit. This is a CJA appeal. I was assigned to pursue Mr. Chandler's appeal. As far as the court asked about whether Mr. O'Brien's report had any evidentiary value and I would suggest to the court even though he law first of all his report if anything understates the severity of Mr. Chandler's condition but second of all Dr. O'Brien, Mr. O'Brien, his opinion has value as the opinion of a lay witness which is admissible under the federal rules of evidence where the opinion would help the court understand an important issue that's before it. So I would suggest and then finally I actually looked into trying to find Dr. O'Brien in the summertime. One of my ideas was to prepare a declaration in admissible form and resubmit it to the judge. I couldn't find the guy. I even called there's a professional association listed at the bottom of the report. I called them they knew who he was they said he was a doctor but they couldn't tell me where he was. In retrospect maybe I should have checked the prison rolls to make sure that that he wasn't a prisoner but it never occurred to me that he was a prisoner in the system and that's where the report was coming from. The question that I asked I was really maybe my question was a little too broad but I was addressing it to statements like like Chandler is those are those are our issues that a lay witness has no capacity to express opinions on and I was wondering what the law was with respect to a to a doctor who has become a lay witness not for lack of medical training but through the process of revocation of the license. In that regard your honor I would suggest that the federal rules of evidence state that an opinion given by a lay witness where it will be helpful to the court can be admitted. Well do you think a lay witness has the capacity to say this person is suffering from diabetes? I would say it depends on the medical training that that person has I don't think there's an issue about medical training in this particular matter. Just a matter of curiosity nothing in the case is going to turn on it. I understand. Thank you. So Mr. Hyde you are are you a member of the Second Circuit's CJA panel? I am NOT. I took this appeal I represented Mr. Chandler at the They automatically assign trial counsel. I'm admitted in the Second Circuit. I've made arguments here in the Second Circuit on a number of different cases so I took the appeal. The new assignment last summer came out of the blue. I hadn't really been following Mr. Chandler's case at all and I treated it like any other assignment. I did what I could to resolve the case. I wasn't successful. I wish I tried to move things along but that was a mistake on my part for not having tried to move things along faster. Well thank you very much for your candor. The case is now submitted. We will reserve the decision rather and we'll